An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1110

Filed 18 June 2025

Halifax County, No. 24CVD000186-410

SAVANNAH WOODRUFF, Plaintiff,

v.

JORDAN MARTIN, Defendant.

Appeal by defendant from order entered 15 April 2024 by Judge W. Turner Stephenson, III in Halifax County District Court. Heard in the Court of Appeals 20 May 2025.

*No brief filed for Savannah Woodruff, pro se plaintiff-appellee.*

*Pritchett & Burch, PLLC, by L. Clifton Smith, III, for defendant-appellant.*

ARROWOOD, Judge.

Jordan Martin ("defendant") appeals from a domestic violence protection order entered 15 April 2024. On appeal, defendant argues there was not competent evidence to support the trial court's finding of fact that defendant had placed plaintiff in fear of continued harassment that rises to such a level as to inflict substantial emotional distress. For the following reasons, we vacate the domestic violence

protection order issued against defendant.

## I.    Background

Savannah Woodruff ("plaintiff") and defendant were formerly married and have two children.  At the time of the domestic violence protection order ("DVPO") hearing, plaintiff and defendant had not come to an agreement regarding custody arrangements for their two children.  On 9 March 2024, plaintiff was working as a waitress at a restaurant called Logan's.  Earlier that day, defendant sent a text message to plaintiff asking where their children were that weekend.  Defendant and his fiancée later arrived at Logan's and were seated in plaintiff's section where she was assigned to serve.  However, defendant testified that he was not aware plaintiff was working at Logan's that evening.  Defendant also was not aware that the table he sat at was plaintiff's section to serve and only sat there after he was directed to do so by another employee of the restaurant.

After defendant and his fiancée sat at the table, plaintiff went to tell the manager of the restaurant, who was also her fiancé, that defendant was seated in her section and that she was "a little uncomfortable with it."  The manager then asked defendant to go eat somewhere else.  When defendant refused to leave plaintiff's section of the restaurant, the manager called the police and defendant and his fiancée eventually left the restaurant before police arrived.  Although defendant refused to leave, plaintiff testified that the exchange "wasn't a big scene" and "wasn't dramatic." Plaintiff further testified that defendant did not threaten her in any way.

Plaintiff filed a complaint and motion for a DVPO against defendant on 11 March 2024. In addition to citing the events that took place at Logan's restaurant, plaintiff also stated in her complaint that during an exchange between defendant and plaintiff in a Food Lion parking lot, defendant withheld their son from her and threatened her father. Furthermore, plaintiff alleged that defendant continued to harass her over the phone and made explicit remarks to her in front of her babysitter and their children when he picked up their children from plaintiff's home. On 11 March 2024, the trial court filed an ex parte DVPO, effective until 18 March 2024. A hearing for a permanent protective order took place on 15 April 2024.

During the hearing, plaintiff testified that there was an ongoing custody action simultaneously taking place with this action. Plaintiff stated that she filed this action to "get peace for [herself]" and to use this filing in the custody action to drop off and pick up their children without plaintiff and defendant having to communicate with each other. Defendant testified that since the custody action commenced, plaintiff had eliminated communication with defendant and that is why he texted her the day of the incident to ask where their children were.

After both parties presented their cases, the trial court found that "there has been a level of harassment culminating in the visit to [plaintiff's] workplace and the police having to be called [justifies] entering a no contact order." Specifically, the trial court found:

> The Parties have been in a long relationship which resulted

> in two children. They have been and are currently involved in a protracted custody case. The Parties have had contentious telephone calls and texts, and personal interactions. On 3/9/24 the Defendant and his fiancée went to the Plaintiff's place of employment (Logan's Rest[aurant]) – sat in her section where she served and refused to leave, even after being asked by the manager. The police had to be called to make the Defendant leave.

Thus, on 15 April 2024, the trial court entered a DVPO against defendant effective until 15 April 2025. Defendant filed written notice of appeal on 13 May 2024.

## II.    Discussion

On appeal, defendant argues there was not competent evidence to support the trial court's finding of fact that defendant placed the plaintiff in fear of continued harassment that rises to such a level as to inflict substantial emotional distress. Specifically, defendant argues the evidence presented at trial does not support the trial court's finding that defendant harassed plaintiff and does not support the trial court's finding that plaintiff suffered substantial emotional distress as a result of the alleged acts of defendant. We agree.

In reviewing a DVPO, this Court must determine "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Where there is competent evidence to support the trial court's findings of fact, those findings are binding on appeal." *Burress v. Burress*, 195 N.C. App. 447, 449–50 (2009) (internal citations omitted). To support an entry of a DVPO, the trial court "must make a conclusion of

law that an act of domestic violence has occurred." *Kennedy v. Morgan*, 221 N.C. App. 219, 223 (2012) (internal quotations omitted). N.C.G.S. § 50B-1(a) defines domestic violence as any of the following acts between parties who have shared a "personal relationship":

> (1) Attempting to cause bodily injury, or intentionally causing bodily injury; or
>
> (2) Placing the aggrieved party or a member of the aggrieved party's family or household in fear of imminent serious bodily injury or continued harassment, as defined in G.S. 14-277.3A, that rises to such a level as to inflict substantial emotional distress; or
>
> (3) Committing any act defined in G.S. 14-27.21 through G.S. 14-27.33.

N.C.G.S. § 50B-1(a).

Harassment is defined as "[k]nowing conduct, including written or printed communication or transmission . . . directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose." N.C.G.S. § 14-277.3A(b)(2). "The plain language of the statute requires the trial court to apply only a subjective test to determine whether the aggrieved party was in actual fear[.]" *Walker-Snyder v. Snyder*, 281 N.C. App. 715, 719 (2022). Where this Court finds that the record contains no evidence that the aggrieved party was "torment[ed], terrorize[d], or terrifie[d]" by defendant's actions, this Court will vacate the DVPO. *Id.* at 720.

Here, it is clear from the DVPO that the basis for the trial court's ruling was defendant's actions on 9 March 2024 at plaintiff's place of work. Although the trial court found that defendant had placed plaintiff in fear of continued harassment that rises to such a level as to cause substantial emotional distress, the record and plaintiff's testimony about the events on 9 March 2024 during the DVPO hearing suggest otherwise. First, defendant testified that he was not aware plaintiff was working that night and plaintiff presented no evidence to suggest that defendant knew she was scheduled to work that day. Second, although plaintiff testified that she felt "a little uncomfortable" during the interaction, she also testified that the interaction was not "a big scene" or "dramatic". Plaintiff further testified that neither defendant nor his fiancée threatened plaintiff in any way. Finally, plaintiff testified that when defendant sat in her section of the restaurant, he told her he was only there to eat and not to talk to her. Accordingly, there was insufficient evidence presented at trial to show that defendant knowingly acted to cause terror or torment towards plaintiff. Furthermore, plaintiff herself merely testified to feeling uncomfortable and did not feel threatened by defendant. Thus, the trial court erred in finding defendant harassed plaintiff.

The trial court also found that plaintiff suffered substantial emotional distress as a result of the alleged acts of defendant. "Substantial emotional distress" is defined as "[s]ignificant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." N.C.G.S. § 14-

277.3A(b)(4). This Court has previously held that substantial emotional distress entails "[a] highly unpleasant mental reaction (such as anguish, grief, fright, humiliation, or fury) that results from another person's conduct." *Ramsey v. Harman*, 191 N.C. App. 146, 150 (2008). Furthermore, merely feeling "afraid" or "apprehensive" does not "necessarily support a determination of domestic violence." *Kennedy*, 221 N.C. App. at 224–25. Even if a party feels "uncomfortable," if defendant's actions did not "place [plaintiff] in fear of bodily injury", a DVPO will be reversed. *Smith v. Smith*, 145 N.C. App. 434, 437–38 (2001).

Here, plaintiff testified as to her mental state during the events on 9 March 2024. Plaintiff stated that when defendant showed up at the restaurant and sat in her section, she felt "a little uncomfortable" because she did not know what his intentions were. Furthermore, plaintiff testified that the incident on 9 March 2024 was not "a big scene" and was not "dramatic." Finally, although plaintiff testified that she had been feeling "mentally drained" from her previous interactions with defendant before the events on 9 March 2024, she also stated that neither defendant nor his fiancée threatened her in any way. Plaintiff did not provide any evidence or testimony that would support a finding that plaintiff suffered from a highly unpleasant mental state because of defendant's actions. Furthermore, plaintiff merely felt uncomfortable, which this Court has previously held is insufficient to support a finding of substantial emotional distress or uphold a DVPO.

Because there is no competent evidence that defendant harassed plaintiff or

caused substantial emotional distress in plaintiff, we vacate the domestic violence protective order against defendant.

### III.    Conclusion

For the foregoing reasons, we vacate the order for lack of competent evidence of harassment and substantial emotional distress.

VACATED.

Chief Judge DILLON and Judge HAMPSON concur.

Report per Rule 30(e).